Lorenzo J. Power et al., Appellants-Respondents, *v.* Jacob Falk, Individually and as Trustee for Plaintiffs and for Others, et al., Respondents, and Joseph A. Byrne, as Trustee for Plaintiffs and for Others, Respondent-Appellant.

First Department, December 14, 1961.

*John M. Cunneen* for appellants-respondents.

*Joseph A. Byrne, Jr.,* for Joseph A. Byrne, respondent-appellant.

*Albert J. Rosenthal* of counsel (*Demov & Morris,* attorneys), for respondents.

*Per Curiam.* Plaintiffs appeal from a judgment dismissing the complaint after trial and from an order denying an application to reopen the case for further proof. In view of the disposition made upon the first appeal, the second appeal is dismissed as academic.

Plaintiffs sue for the delivery of certain stock certificates, an accounting of the rents in a certain building, and other equitable relief. It appears that in 1937 the plaintiffs owned the building in question, 147 West 40th Street, having acquired it by descent from Michael Deane, their father. The property was encumbered by a first mortgage in the sum of $76,000 held by the Dry Dock Savings Bank and a second mortgage in the sum of $15,675 held by defendant Jacob Falk. Plaintiffs had frequently gone

to Falk for loans on this building, and the second mortgage was a consolidation of prior mortgages securing those loans and the discounts charged by Falk. At that time the property was in serious financial difficulty. The first mortgagee was in process of foreclosing its mortgage and a receiver appointed on its application was in possession and collecting the rents. The main tenants were in default on their rent. At this juncture plaintiffs consulted Falk to enlist him in an effort to have the foreclosure proceedings withdrawn, and for a period of two years he negotiated unsuccessfully with the bank.

In 1939 some sort of tentative plan with which the bank was to be approached was worked out. It was decided to form a corporation to which the plaintiffs were to convey the property in return for the stock of the corporation. Falk was to advance additional money which was to be applied on the first mortgage, and his second mortgage was to be increased in the amount of this advance. To protect his investment he was to have an equal voice with the owners in the management of the property. Accordingly, a deed was executed by the plaintiffs to Morina Equities, Inc., a corporation not yet formed, and delivered in escrow to Falk's attorney, who was to form the corporation. It was later formed.

At this point the contentions of the parties differ very sharply. Falk contends that he undertook the enterprise in the belief that the foreclosure action could be settled for some figure between $2,000 and $5,000. Offers in this range were refused by the Dry Dock Savings Bank and it insisted on payment of the full sum in default, some $13,000, plus all sums in the hands of the receiver. Falk reported to the plaintiffs that he was unwilling to make any such investment and the matter then stood at an impasse for a period. Upon being further consulted, he pointed out that the plaintiffs had practically no equity in the building at current real estate values and, while they stood to lose the building, they were not losing anything that had any value to them. As for himself, he had the amount of the second mortgage to protect, and he was willing to protect it, but only if he got the building. He was unwilling to put out any further moneys (at least not as much as would be required) on any other basis, and would pay the plaintiffs nothing. He was agreeable to releasing them on the notes and bonds which his mortgage secured. He claims that this proposition was accepted by the plaintiffs and he thereafter regarded the stock of Morina Equities as his own. He paid the Dry Dock Bank the amounts required by it and the foreclosure proceeding was discontinued. The Morina stock is now owned by his son, Benjamin Falk.

The plaintiffs contend that Falk agreed to advance the necessary moneys to the Dry Dock Bank. In return the property was to be managed by two trustees, one on behalf of the plaintiffs and one representing Falk. Such trustees were actually appointed but functioned for only a brief period. In 1940 they demanded delivery of the Morina stock but were told it was not formally issued and that when it was they would get it. As they expected no income from the property at the time, they did nothing further about it. In 1955 they realized that the building was well rented, and when their inquiries of Falk were not answered and their demands refused they brought suit.

There are great difficulties in the way of resolving these conflicting versions of the facts. None of the documents that would support the contentions of one side or the other seem to have been executed — in fact, many of them were never even drawn. The testimony abounds with discrepancies and there is much that challenges belief. Whether this is due to the effect of time on memory or to deliberate attempts to mislead, not having heard the witnesses we are in no position to say. Two glaring facts do appear — plaintiffs, who owned the property, have nothing and received nothing for it, whereas Falk, for an expenditure of some $27,000, now has a property worth many times that. On the other hand, with apparent full knowledge of what took place, plaintiffs, although they had the benefit of legal counsel, did nothing for over 15 years.

The opinion of Special Term states that it constitutes the decision under section 440 of the Civil Practice Act. Unfortunately, it falls short of that. There is no quarrel with the form, but the opinion must state the facts which it deems essential. (*Mason* v. *Lory Dress Co.*, 277 App. Div. 660; *220-2 East 85th St.* v. *Fastenberg*, 13 A D 2d 724; *Hurwitz* v. *Hurwitz*, 3 A D 2d 1009.) Here the court recited the controversy, much as we have done. There is no way of knowing what ultimate facts the court found to support the conclusion that plaintiffs failed to make out a case, or whether, if such a case was made out, it is barred by limitations. While we would have the power to make findings, this is not a proper case for the exercise of that power, as much would depend on the credibility of the witnesses and the visible indications of authoritative recollection. Rather than have Trial Term make new findings, we deem it in the best interest of justice to order a trial *de novo*, with costs to abide the event.

The judgment should be reversed, on the law and on the facts and, in the exercise of discretion, a new trial ordered, with costs to abide the event.

McNALLY, J. P., STEVENS, EAGER, STEUER and BASTOW, JJ., concur.

Judgment unanimously reversed, on the law and on the facts and, in the exercise of discretion, a new trial ordered, with costs to abide the event.

Appeal from order entered on January 26, 1961 unanimously dismissed as academic, without costs.